[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case, which was tried to the court, involves building material sold by the plaintiff, The Hatch Bailey Company, to the defendants, who, according to the summons, are John Mallozzi and his wife, Philomena Mallozzi, and a corporate defendant, Concrete Concepts, Inc. The plaintiff brought a four count complaint which refers in the caption to John Mallozzi and Philomena Mallozzi d/b/a Concrete Concepts. In the first two counts, the plaintiff alleges that in late 1982 it entered into a contract with Mr. and Mrs. Mallozzi, in which the two individual defendants agreed to pay the plaintiff for building materials and supplies furnished by the plaintiff, and that they had failed to do so. In the third count, the plaintiff alleges that the account was subsequently changed to John Mallozzi and Philomena Mallozzi d/b/a Concrete Concepts. In the fourth count, the plaintiff claims that if the individuals are not found to be liable, then the corporate defendant, Concrete Concepts, Inc., should be held responsible for the debt.
The defendants filed an answer generally denying the material allegations of the complaint, and added a special defense that any amount due the plaintiff is an obligation of the corporate defendant. The plaintiff filed a reply to this defense which CT Page 5496-PPPP contended that the corporate status of Concrete Concepts, Inc. should be disregarded as a "fiction."
The evidence disclosed that the plaintiff did supply building materials, such as lumber and hardware, in the amount claimed, $37,458, and the defendants do not dispute this amount. The issue in the case, however, is whether the Mallozzis individually, or the corporation, Concrete Concepts, Inc., as claimed by the defendants in their special defense, is responsible for payment of this amount. The plaintiff also seeks to collect a finance charge and attorney's fees.
The plaintiff further claims that although it dealt with Mr. Mallozzi as an individual, if it is found that the material was sold and delivered to the corporation, then the "corporate veil" of Concrete Concepts, Inc. should be "pierced." The plaintiff also contends that it is entitled to interest pursuant to General Statutes § 52-192a and Practice Book § 350 because of an offer of judgment filed for $45,000 on January 28, 1994, within eighteen months from the filing of the complaint.
The evidence revealed the following. The Mallozzis filed two applications for credit with the plaintiff in October and November of 1982. The applications were made by them as "individuals" and not under the heading for "corporations." The invoices for the building materials were directed to "Concrete Concepts c/o John Mallozzi," at 1600 Bedford Street, Stamford. The customer was identified on the "customer code" on the invoices as "Conccon," with an account number of #1198. The plaintiff sent out monthly statements directed to "Concrete Concepts c/o John Mallozzi." The invoices and monthly statements confirm that the plaintiff is owed $37,458. The 1982 credit applications provide that the plaintiff is entitled to a finance charge of 1 1/4% per month for unpaid balances, and that in the event of default, to "reasonable attorney's fees and other costs of collection." The plaintiff seeks a finance charge of $26,392 from 1991 to the present, and attorney's fees in the amount of $7,656, for a total claim of $71,506.
At some point in the spring of 1988, Mr. Mallozzi asked the plaintiff to change his account name and number to "Concrete Concepts." The change was made, and he was given a new account number, #2913, and thereafter orders from Mallozzi for material were charged to this account. Invoices were still directed to "Concrete Concepts c/o John Mallozzi," at 1600 Bedford Street. CT Page 5496-QQQQ The "customer code" on the invoices continued to refer to "Conccon."
As proof that the plaintiff knew it was dealing with a corporation, the defendants introduced in evidence six checks totalling approximately $9,660, which were in the name of "Concrete Concepts, Inc." and were accepted and cashed by the plaintiff between January, 1988, and May, 1991. There is no question that a corporation in that name was formed in 1987, and that it went out of business as of December 31, 1992, but the issue is whether the plaintiff and Mallozzi were dealing with each other in a corporate context.
The plaintiff s contention that it was dealing with Mallozzi as an individual is substantiated by several other facts that were presented in the trial. The plaintiff presented convincing evidence that if Mallozzi asked to change the account from an individual to a corporate account, a new credit application would have been required, and that no such application was requested or issued. The plaintiff introduced an application for credit by John Mallozzi and Angelo Mallozzi, which was submitted to the plaintiff in 1987, in the name of "Jamco Partnership." This application for credit referred to "Partnerships or Corporations." This illustrates the point that if billing in the name of a corporation, Concrete Concepts, Inc., had been sought, a new credit application would have been required on behalf of the corporation, and the application would have been under the heading "Partnerships and Corporations." Another item of evidence that is relevant to this issue is an authorization signed by John Mallozzi in February, 1991, authorizing the plaintiff to accept orders for material from three named individuals to be charged to the accounts of "Jamco Partnership" and "Concrete Concepts," but with no reference to a corporation.
As to the acceptance of corporate checks, the plaintiff submitted credible testimony that the company's policy is to accept checks from any source, including a corporate check, and apply it to the balance due in an account under another name, in this case, account #2913, in the name of Concrete Concepts.Diamond Match Co. v. Crute, 145 Conn. 277, 141 A.2d 247 (1958), presents a fact pattern rather similar to the present action. In that case the account itself, the invoices, the deliveries and monthly statements were all directed to an individual, not to the corporation of which he was president and treasurer. As happened in the present case, the monthly statements were mailed to the CT Page 5496-RRRR individual defendant's home, which was also the office of the corporation. The invoices were paid by seven corporate checks signed by the defendant as treasurer. The fact that corporate checks were used to pay the plaintiff was considered immaterial in the Diamond Match case. The court referred to the law of agency axiom that if an agent "would avoid personal liability, the duty is on the agent to disclose his principal and not on the party with whom he deals to discover this." Id., 279. The court further found in that case, just as in the present case, that: "[A]t no time prior to suit did the defendant or any other officer or agent of the corporation inform the plaintiff that the materials were ordered for, or were to be charged to, the corporation." Id., 278. Just as in Diamond Match, the defendants in this case "made no attempt to have the plaintiff charge or bill the corporation instead of [themselves] . . . [and] made no protest until after financial difficulties arose. . . ." Id., 279.
Because the delivery slips, the invoices and the statements were always directed to Concrete Concepts c/o John Mallozzi, and because of the absence of a new credit application for a corporation, the court concludes that the Mallozzis are personally liable for the amount owed. The plaintiff did not believe or know it was dealing with a corporation, and did not agree to do so.[1]
Since the plaintiff is entitled to damages in the amount of $71,506, including finance charges and attorney's fees, its request for 12% annual interest based on an earlier offer of judgment for $45,000 is granted as calculated in General Statutes § 52-192a(b). This interest from September 3, 1992, the date of filing of the complaint, to the date of this judgment amounts to $34,816.59, which, when added to $71,506, results in a total judgment of $106,322.59, which hereby enters against the individual defendants. Costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 24th day of September, 1996.
William B. Lewis, Judge